UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER BOWMAN, *individually and on behalf of all others similarly situated,* | ) ) ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| Plaintiff, | ) | |
| | ) | |
| *v.* | ) | CASE NO. 1:25-cv-00256 |
| | ) | |
| THE METROHEALTH SYSTEM, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS (ECF #16)

Plaintiff Jennifer Bowman ("Plaintiff"), *individually and on behalf of all others similarly situated,* respectfully opposes Defendant's The MetroHealth System ("Defendant" or "MetroHealth") Motion to Dismiss (ECF #16, the "Motion") Plaintiff's Complaint (ECF #1). Contrary to Defendant's assertions, the Complaint sets forth detailed operative facts that form the basis for Plaintiff's claims of wage theft in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, and related state-law claims. Further, Defendant's filing fails to apprise the Court of authority directly contrary to Defendant's positions. As detailed in the attached Memorandum in Support, Defendant's Motion should be denied in its entirety.

*Respectfully Submitted,*

*s/ Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
11925 Pearl Rd., Suite 308
Strongsville, Ohio 44136
Telephone: (216) 912-2221
jscott@ohiowagelawyers.com

rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

Seth R. Lesser (NY SL5560) *
Christopher M. Timmel (NY CT9831) *
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
seth@klafterlesser.com
christopher.timmel@klafterlesser.com

*Attorneys for Plaintiff, proposed FLSA Collective Action Plaintiffs, and proposed Fed. R. Civ. P. 23 Class Counsel*

* Proceeding *Pro Hac Vice*

# TABLE OF CONTENTS

I.   STATEMENT OF THE ISSUES TO BE DECIDED………..…………………………..……1

II.  SUMMARY OF THE ARGUMENT PRESENTED.................................................................. 2

III. BACKGROUND AND FACTS....................................................................................... 3

   A.  Plaintiff's Allegations and Defendant's Admissions ........................................................ 3

   B.  Defendant's Motion Misconstrues Plaintiff's Allegations by Interjecting its Baseless
      Interpretation of an Imported Written Policy, and then Argues that its Interpretation is
      Determinative of Whether Plaintiff's Complaint States a Claim…………………………..5

IV. APPLICABLE LAW & ARGUMENT……..…………………………………………...9

   A.  Standard of Review on Motion to Dismiss .......................................................................... 9

   B.  Plaintiff's Complaint Adequately Sets Forth Sufficient Operative Facts to Support
      Plaintiff's Claims.................................................................................................................. 9
     1.  Plaintiff's Complaint sufficiently alleges, and MetroHealth confirms, that Defendant
        non-neutrally rounds time...................................................................................... 9
     2.  An FLSA/ OMFWSA Complaint adequately sets facts where defendant is presented with
        sufficient notice of the prima facie claim it is being asked to defend ............................ 12

   C.  Defendant's Reliance on Forrester, and Related Case Law, is Misplaced as this Case
      Concerns Unlawful Time Rounding, not the Compensability of Preliminary or
      Postliminary Activities under the Portal-to-Portal Act........................................................ 15

   D.  Plaintiff has Adequately Set Forth a Claim for Untimely Payment of Wages Pursuant to
      O.R.C. § 4113.15(A) (Count Three) ................................................................................... 16

   E.  Plaintiff Demonstrably Pleads Willfulness (Count Four) ................................................... 18

V.   CONCLUSION ................................................................................................................ 23

## Table of Authorities

**Federal Cases**

*Acosta Colon v. Wyeth Pharm. Co.*,
    363 F. Supp. 2d 24 (D.P.R. 2005) ...................................................................... 19

*Ale v. TVA*,
    269 F.3d 680 (6th Cir. 2001) ............................................................................ 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................... 9

*Austin v. Amazon.com, Inc., No. C09-1679JLR*,
    2010 U.S. Dist. LEXIS 45623 (W.D. Wash. May 10, 2010) ................................. 11

*Baum v. Intertek Testing Servs., No. 1:13CV1347*,
    2013 U.S. Dist. LEXIS 173039 (N.D. Ohio Dec. 10, 2013) ................................. 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 9

*Bey v. WalkerHealthCareIT, LLC, No. 2:16-cv-1167*,
    2018 U.S. Dist. LEXIS 72819 (S.D. Ohio May 1, 2018) ..................................... 21

*Bobnar v. AstraZeneca Pharms. LP*,
    758 F. Supp. 3d 690, 2024 U.S. Dist. LEXIS 214549 (N.D. Ohio 2024) .............. 17

*Boone v. Primeflight Aviation Servs., No. 15-CV-6077*,
    2018 U.S. Dist. LEXIS 28000 (E.D.N.Y. Feb. 20, 2018) ..................................... 11

*Chao v. Self Pride, Inc., No. RDB 03-3409*,
    2005 U.S. Dist. LEXIS 11653 (D. Md. June 14, 2005) ....................................... 11

*Clark v. A&L Homecare & Training Ctr.*,
    68 F.4th 1003 (6th Cir. 2023) .......................................................................... 16

*Conley v. Gibson*,
    355 U.S. 41 (1957) ........................................................................................ 12

*Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*,
    821 F.3d 1069 (9th Cir. 2016) .......................................................................... 11

*Craig v. Bridges Bros. Trucking LLC*,
    823 F.3d 382, n.1 (6th Cir. 2016) ..................................................................... 18

*Dozier v. All. Glob. Sols., LLC, No. 3:24-cv-00348*,
    2024 U.S. Dist. LEXIS 183647 (M.D. Tenn. Oct. 8, 2024)(2) ......................... 13,14

*Estate of McConnell v. EUBA Corp., No. 3:18-cv-00355*,
    2021 U.S. Dist. LEXIS 97576 (S.D. Ohio May 24, 2021) ................................... 18

*Forrester v. Am. Sec. & Prot. Serv. LLC*, No. 21-5870,
  2022 U.S. App. LEXIS 12959 (6th Cir. May 13, 2022) ................................... 2, 15

*Garner v. Clev. Clinic Found.*,
  735 F. Supp. 3d 867 (N.D. Ohio 2024) ......................................................... 19, 23,

*Gibbs v. Sedgwick Claims Mgmt. Servs., No. 2:21-cv-2153-SHM-cgc*,
  2022 U.S. Dist. LEXIS 227 (W.D. Tenn. Jan. 3, 2022) ............................ 13, 21, 22

*Gilbo v. Agment LLC, N.D.Ohio No. 1:19-cv-00767*,
  2020 U.S. Dist. LEXIS 26031 (Feb. 14, 2020) ............................................... 12

*Gonzalez v. Rite Aid of New York, Inc.*,
  199 F. Supp. 2d 122 (S.D.N.Y. 2002) ........................................................... 23

*Houser v. Powerdot, Inc., No. 1:21-cv-915*,
  2022 U.S. Dist. LEXIS 239410 (N.D. Ohio July 11, 2022) ............................... 9

*Howard v. Post Foods, LLC, No. 1:19-cv-570*,
  2022 U.S. Dist. LEXIS 166029 (W.D. Mich. Sep. 14, 2022) .......................... 16,17

*Integrity Staffing Sols., Inc. v. Busk*,
  574 U.S. 27 (2014) ...................................................................................... 15

*Jensen v. Univ. Properties,* No. 2:05-cv-172 TC,
  2007 U.S. Dist. LEXIS 5170 (D. Utah Jan. 24, 2007)..................................... 23

*Larson v. Rush Fitness Corp., No. 3:*12-cv-109,
  2013 U.S. Dist. LEXIS 190874 (E.D. Tenn. Dec. 10, 2013) ............................ 22

*Lower v. Electronic Data Systems Corp.*,
  494 F.Supp.2d 770 (S.D. Ohio 2007) ........................................................... 17

*Maynard v. Modern Industries, No. 18-12523*,
  2019 U.S. Dist. LEXIS 98243 (E.D. Mich. June 12, 2019) ............................. 20

*Meek v. SkyWest, Inc.*,
  562 F. Supp. 3d 488 (N.D. Cal. 2021) .......................................................... 16

*Mickens v. Sweet Twist Frozen Yogurt, LLC No. 2:20-cv-2244*,
  2021 U.S. Dist. LEXIS 97394 (S.D.Ohio May 24, 2021) ................................ 12

*Miller v. AT&T Corp., No. 1:13-cv-01422*,
  2013 U.S. Dist. LEXIS 146037 (N.D. Ohio Oct. 9, 2013) ............................. 14,20

*Monroe v. FTS USA, LLC, No. 2:08-cv-02100-BBD-dkv*,
  2008 U.S. Dist. LEXIS 116643 (W.D. Tenn. July 9, 2008) ............................. 22

*Nolan v. Detroit Edison Co.*,
  991 F.3d 697 (6th Cir. 2021) ....................................................................... 10

*Oglesby v. FedEx Ground Package Sys.*, No. 3:20-cv-346,
　　2023 U.S. Dist. LEXIS 49178 (S.D. Ohio Mar. 22, 2023) ................................... 18

*Parks v. Cent. USA Wireless, LLC*, No. 1:17-cv-448,
　　2019 U.S. Dist. LEXIS 167502 (S.D. Ohio Sept. 29, 2019) ................................ 18

*Pope v. Walgreen Co.*, No. 3:14-CV-439,
　　2015 U.S. Dist. LEXIS 12960 (E.D. Tenn. Feb. 4, 2015) .................................... 14

*Smith v. Local Cantina, LLC*, No. 2:20-cv-03064,
　　2022 U.S. Dist. LEXIS 73598 (S.D. Ohio Apr. 19, 2022) .................................. 17

*Stein v. HHGREGG, Inc.*,
　　873 F.3d 523 (6th Cir. 2017) .................................................................... 23

*Swierkiewicz v. Sorema N.A.*,
　　534 U.S. 506 (2002) .............................................................................. 12

*Tay v. New York*, No. 22-CV-8379,
　　2024 U.S. Dist. LEXIS 173097 (S.D.N.Y. Sep. 24, 2024) .................................... 5

*Thomas v. Speedway SuperAmerica, LLC*,
　　506 F.3d 496 (6th Cir. 2007) .................................................................... 12

*Thompson v. RGT Mgmt.*, No. 2:11-cv-02573-AJT-dkv,
　　2012 U.S. Dist. LEXIS 111425 (W.D. Tenn. June 8, 2012) ................................. 6

*United States, ex rel. Ibanez v. Bristol-Meyers Squibb Co.*,
　　874 F.3d 905 (6th Cir. 2017) ..................................................................... 9

*Walsh v. Americare Healthcare Servs.*, No. 2:21-CV-5076,
　　2023 U.S. Dist. LEXIS 44991 (S.D. Ohio Mar. 16, 2023) ................................. 20

**Federal Statutes**

29 U.S.C. § 211 ..................................................................................... 22

29 U.S.C. § 254 ..................................................................................... 15

29 U.S.C. §§ 207, 216 ............................................................................. 14

**State Statutes**

O.R.C. § 2307.60 ............................................................................. 1, 4, 19

O.R.C. § 4111.09 ............................................................................... 20, 21

O.R.C. § 4113.15 ............................................................................ 3, 17, 18

O.R.C. §§ 4111.03 ............................................................................. 12, 1

Ohio Rev. Code § 4111.10 ....................................................................... 12

**Rules & Regulations**

Fed. R. Civ. P. 8 ........................................................................................................................ 9

Fed. R. Civ. P. 23 ............................................................................................... 1, 18, 24

29 C.F.R. § 785.48 ........................................................................................... *passim*

<u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S</u>
<u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (ECF #16)</u>

**I.  STATEMENT OF THE ISSUES TO BE DECIDED**

Defendant MetroHealth's Motion to Dismiss (ECF #16) presents six issues: (1) whether Defendant can credibly argue Plaintiff has failed to state a claim under the Fair Labor Standards Act ("FLSA"; Count One) by ignoring that Plaintiff's time rounding claim is definitively based on the FLSA's time rounding provisions of 29 C.F.R. § 785.48, (and not inapplicable case law interpreting other provisions, which is what Defendant tries to claim); (2) whether Defendant's attempt to claim its "Timekeeping Policy (HR-53)" and Defendant's invented "grace period" label can overcome Plaintiff's well-pled allegations of an unlawful time rounding policy and practice that in actuality results in systemic underpayment of wages; (3) whether Plaintiff has sufficiently pled the claims for an FLSA violation (Count One) or a Ohio Minimum Fair Wage Standards, O.R.C. §§ 4111.03, 4111.10 (("OMFWSA"; Count Two); (4) whether Defendant can mischaracterize Plaintiff's untimely payment of wages claim under O.R.C. § 4113.15(A) (requiring prompt payment) (Count Three) as a claim under subsection (B) (which pertains to disputed wages); and (5) whether Defendant can successfully argue for dismissal of Plaintiff's claim under O.R.C. § 2307.60 (Count Four) by baselessly asserting a failure to plausibly allege a "willful" FLSA violation, despite the Complaint's extensive factual support for willfulness.

Fifth, while Defendant's motion raised an issue as to whether Plaintiff's overtime Rule 23 class claim (Count Two) under O.R.C. §§ 4111.03, 4111.10, could be dismissed as to the class action allegations, the parties have agreed to stipulate to their dismissal, subject to a motion for reinstatement upon a ruling by either the Sixth Circuit or the Ohio Supreme Court addressing the subject.  And, finally, while Defendant's motion also argues that (or seeks clarification concerning whether) to the extent Plaintiff's unjust enrichment claim seeks overtime pay it is not

permitted because the OMWFSA provides an exclusive remedy (ECF #16 at PageID #105),
Plaintiff clarifies that the unjust enrichment claim (Compl. ¶¶ 35-39, 109-116) only seeks to
recover for unpaid straight time or non-overtime hours, not statutory overtime. It is thus distinct
from the FLSA and OMFWSA overtime claims and Defendant does not otherwise challenge its
assertion.

## II.     SUMMARY OF THE ARGUMENT PRESENTED

The Complaint sufficiently pleads claims for relief that require denial of this motion.
Defendant's argument that Plaintiff fails to state an FLSA claim by relying on *Forrester v. Am.
Sec. & Prot. Serv. LLC*, No. 21-5870, 2022 U.S. App. LEXIS 12959 (6th Cir. May 13, 2022), is
misplaced:  Plaintiff's claim is squarely based on unlawful time rounding under 29 C.F.R. §
785.48, not the Portal-to-Portal Act's provisions regarding preliminary or postliminary activities.
The Complaint could not be clearer (*see* Compl. ¶¶ 43, 50) in alleging that Defendant's time
rounding policy and practice systematically shaves compensable time from employees' principal
work duties from the moment they clock in until they clock out, and that Defendant's
timekeeping system captures this time worked but fails to pay for all of it because it is
systematically rounded away. Defendant's attempt to reinterpret a policy it attaches to its Motion
and its invention of the term "grace period" (which is nowhere in that policy), cannot negate the
Complaint's allegations of time manipulation that fails to compensate employees for all hours
worked. In fact, the policy, mathematically and on its face, is a non-neutral rounding system.
And, further, both Plaintiff's FLSA and state law claims are entirely sufficiently and well-pled so
that Defendant is unquestionably able to understand these claims.

Plaintiff's O.R.C. § 4113.15(A) claim for untimely payment of wages (Count Three) alleges a failure to make prompt payment of all wages earned, a violation distinct from a § 4113.15(B) claim for liquidated disputed wages, upon which Defendant bases its argument.

Finally, Plaintiff's claim for civil damages for criminal acts under O.R.C. § 2307.60 (Count Four) is supported by detailed allegations of Defendant's willful FLSA violations, which constitute the requisite underlying criminal act.

## III.    BACKGROUND AND FACTS

Plaintiff's Complaint for unpaid wages due to Defendant's time rounding and/or editing policies and practices was filed on February 10, 2025 (ECF #1).  Defendant both filed an Answer (ECF #17), and the present Motion to Dismiss (ECF #16), on April 18, 2025.

### A.    Plaintiff's Allegations and Defendant's Admissions

The alleged facts are straightforward. Plaintiff Bowman was employed by MetroHealth as a non-exempt, hourly medical practice assistant (ECF #1, Compl. ¶ 17; *see* ECF #17, Def.'s Answer ¶ 17). Pursuant to the FLSA and Ohio law, MetroHealth was required to pay Plaintiff and similarly situated non-exempt employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) in a single workweek. (*See* Compl. ¶ 21; Answer ¶ 21). Defendant admits that Plaintiff regularly worked more than forty (40) hours in one or more workweeks. (Compl. ¶ 22; Answer ¶ 22). Plaintiff and other nonexempt workers recorded their time by clocking in when they began working, and clocking out at the end of their workday when they stopped working. (*Id.* at ¶ 26). The Complaint alleges that after clocking in, Plaintiff and other members of the FLSA Collective and State-law Class immediately "performed their actual, principal job duties when they clock in at

the beginning of the workday, and until they clock out at the end of the workday." (*Id.* at ¶¶ 26, 34). However, Defendant failed to pay for all of this time worked. (*Id.* at ¶¶ 24-39).

The Complaint specifically alleges that Defendant has a "time rounding and/or editing policy, and time manipulation practices in conformity with this policy, that led to less time paid than time worked" (*id.* at ¶ 25) and that this system, over a period of time, results in the failure to compensate employees properly for all the time they have actually worked, in violation of 29 C.F.R. § 785.48(b) (*id.* at ¶¶ 28-29, 33). This time rounding is "rigged in Defendant's favor and is willfully designed to pay less time work than time paid." (*Id.* at ¶ 29). Furthermore, the Complaint alleges that these pay practices were the result of systematic, system-wide policies originating at the executive level within MetroHealth. These policies regarding time rounding were the result of knowing and reckless executive decisions (*id.* at ¶ 31) and hence were deliberate and willful, as its management *knew* employees were working time for which they were not paid due to the timekeeping, rounding, and editing practices (*id.* at ¶ 32). This knowledge, and reckless disregard for the FLSA's requirements, is further evidenced by allegations that Defendant, a large and sophisticated employer with access to "an in-house legal team, as well as … outside counsel" and "industry experience and custom" (*id.* at ¶ 45) knew of its FLSA and Ohio law payment requirements yet failed to pay all overtime owed based on its explicit knowledge (*id.* at ¶¶ 46-49). Plaintiff further alleges that Defendant willfully and intentionally transmitted inaccurate and/or incomplete, post-edited, rounded, and modified records to payroll to reduce labor costs. (*Id.* at ¶ 43, 50). The Complaint asserts that, pursuant to the FLSA, 29 C.F.R. § 785.13, MetroHealth accepted the benefits of free work without compensating employees, despite its duty to ensure all work, including work that *it intentionally deleted* when it rounded time, is paid in accordance with the FLSA. (*Id.* at ¶¶ 27, 31).

4

**B.** **Defendant's Motion Misconstrues Plaintiff's Allegations by Interjecting its Baseless Interpretation of an Imported Written Policy, and then Argues that its Interpretation is Determinative of Whether Plaintiff's Complaint States a Claim**

Defendants in FLSA cases routinely defend their unlawful practices by claiming that their policies are legally and facially valid; so, in effect, too does MetroHealth point to its attached "Timekeeping Policy (HR-53)" (ECF #16-1, hereinafter "Policy HR-53"), to argue that Plaintiff's claims must fail. Two points are critical. *First*, it must be noted that the Complaint does not allege that "Policy HR-53" is the sole basis for the wage theft, but rather the uncompensated time results from the entirety of Defendant's "time rounding and/or editing policy, and time manipulation practices in conformity with this policy." (Compl. ¶¶ 25, 28, 30).[1] Indeed, Defendant's repeated characterization of its pre-shift clock-in rules as a "grace period" (ECF #16 at PageID ##88, 91, 96, 102) is a self-serving label not found anywhere in Policy HR-53 but litigation-invented by Defendant to controvert the Complaint's allegations that employees perform compensable work while on the clock – time that was rounded away by Defendant – for which they are not paid and hence presents "over a period of time, [a] failure to compensate the

---

[1] Plaintiff's Complaint's reference to Defendant's "policy" and "practices" is not limited to the four corners of Policy HR-53. It encompasses the entirety of Defendant's timekeeping and time rounding/payment system, including but not limited to other written policies such as those concerning attendance, tardiness, discipline, and corrective action (*see below* with respect to Defendant's intentional omission of policies incorporated into Policy HR-53); and, importantly, how Defendant's time rounding data evinces that its time rounding "policy, and time manipulation practices in conformity with this policy" results, over a period of time, in the failure to compensate employees properly for all the time they have actually worked. *See, e.g., Tay v. New York,* No. 22-CV-8379 (KMK), 2024 U.S. Dist. LEXIS 173097, at *24-26 (S.D.N.Y. Sep. 24, 2024) (noting how the data "analysis, itself, supports certification as it demonstrates that the legality of [defendant's] rounding policy is subject to common, collective-wide proof," where the " majority, or at least a plurality, of shifts remain 'adversely affected by rounding.'"). In fact, MetroHealth has in its decidedly cherry-picked presented policy tries to ignore its other relevant policies that are "Cross Reference[d]," and specifically incorporated into Policy HR-53. These include Defendant's "HR-03 - Pay Practices, Overtime, and Deductions," "HR-34 – Attendance Standards," and "HR-36 - Corrective Action." (*See generally* ECF #16-1).

employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b) (Compl. ¶¶ 28, 29, 33).

But, *second*, even if MetroHealth's policy was facially in conformity with the FLSA's requirements, that would not end the inquiry because it is well-established within this Circuit that what may exist as to a policy on paper may appear valid but it is what happens in actual practice that matters.  *See Ale v. TVA*, 269 F.3d 680, 692 (6th Cir. 2001) (leading decision; recognizing that words describing a position in a policy are not a "magical incantation" that displace the actual facts of the job); *Thompson v. RGT Mgmt.*, No. 2:11-cv-02573-AJT-dkv, 2012 U.S. Dist. LEXIS 111425, at *13 (W.D. Tenn. June 8, 2012) ("An employer could have a facially valid policy [] but cause an employee to work in contravention of the policy so that an FLSA violation occurs.").  Indeed, under the FLSA even a facially valid timekeeping policy can violate the law if, in practice, the policy does not end up being neutral when applied.  *See* citations at page 11, below.  Thus, the Complaint's clear and repeated allegations as to how Plaintiff and others were systematically short-changed by MetroHealth's rounding policies would necessarily trump any supposed facially validity of Policy HR-53, particularly given the full extent of what Plaintiffs allege as being the violation as not limited to the Policy. *See* note 1, above.

But more importantly, the Policy, even as submitted by Defendant demonstrates – by its very terms – that the Defendant's time rounding is *not* neutral, either facially or mathematically, and systematically deprives employees of compensation for all hours worked. A key provision from Defendant's Policy HR-53, which Defendant omits in its facts and analysis, provides: "[e]mployees are expected to be at their workstation and ready to start their duties at the beginning of their shift, and they are expected to work until the end of their shift." (ECF #16-1 at § 1.1.1). This mandate, when viewed in conjunction with the rounding mechanisms detailed in

the same policy and the allegations in the Complaint, illustrates how employees are systematically undercompensated.

With respect to clocking in and starting their shift, Policy HR-53 states: "[f]or the ***initial clock-in at the start of an employee's shift***, the system permits an employee to swipe their badge, or clock in using a computer, no earlier than six (6) minutes prior to the start of their shift." (ECF #16-1, § 1.2.1 (emphasis added)). This policy ***does not state*** that employees are prohibited from working upon clocking in, and identifies the "initial clock-in" as the "start of an employee's shift." Nowhere does this policy state that such period is some kind of "grace period," but it in fact states the opposite – employees are to be ready and working when they clock in and start their shift. (*See id.* at § 1.1.1). § 1.2.1 goes on to state that "[t]hose six minutes are rounded forward, and the employee is paid beginning at the scheduled start time." This "rounding forward" of up to six minutes benefits MetroHealth and disadvantages employees – as Plaintiff alleges, and which is required and confirmed by Policy HR-53, employees begin performing their "actual, principal job duties when they clock in." (Compl. ¶¶ 26, 34; *see* ECF #16-1 at § 1.1.1). This, coupled with the rounding forward, creates a system where employees clock in to start their shift, are required to be ready to work and working upon clock in, and immediately begin their principal job duties upon clocking in, but are not paid for this time worked because the six rounded minutes *always* benefits MetroHealth.

Regarding clocking out, Policy HR-53 clearly provides how the rounding system is rigged in Defendant's favor at the end of shifts:

- If an employee works 1-3 minutes past their scheduled end time, as they are expected to do (ECF #16-1, § 1.1.1, requiring work "until the end of their shift"), Policy HR-53 rounds this time back to the scheduled end of shift, meaning these 1-3 minutes of compensable work are unpaid (*id.* at § 1.3.1.2). This directly harms employees by failing to compensate them for all time worked on the clock.

- Moreover, employees are penalized if they clock out 4-6 minutes early, with a .10 reduction in recorded time and pay (ECF #16-1, § 1.3.1.1), further ensuring the policy can, and does, operate to the detriment of employees. By way of example, if an employee clocks out 4 minutes early, MetroHealth deletes .10 hours (or 6 minutes) from their pay, which is a docking of compensable time in violation of 29 C.F.R. §§ 785.48, 785.13. (As alleged at Compl. ¶ 33).

- Conversely, while clocking out 4-6 minutes past the scheduled end of shift results in additional pay (*id.* at § 1.3.1.2), and clocking out 1-3 minutes early is rounded to the shift end (*id.* at § 1.3.1.1), these provisions do not negate the harm caused by the failure to pay for all compensable work performed by employees who work up to or slightly past their scheduled end time.

The combination of the beginning of shift clock-in policy (rounding forward up to six minutes of beginning of shift work with no exception) and the clock-out policy (specifically, rounding back 1-3 minutes of work performed at the end of shifts, and docking employees for clocking out too early) creates a system where employees are constantly at risk of uncompensated labor at both ends of their shifts. While some clock-out scenarios might appear to benefit employees in isolation (*e.g.*, getting paid for a full shift if clocking in exactly on the hour, and clocking out 1-3 minutes early), the critical allegation in the Complaint is that the overall application and practice of Defendant's timekeeping system, considering both start and end of shift rounding, "virtually always rounds against Plaintiff" and "is nearly always in Defendant's favor," resulting "over a period of time, in failure to compensate the employees properly for all the time they have actually worked." (Compl. ¶¶ 28-29, 33 (citing 29 C.F.R. § 785.48(b))). Those are the allegations in the case and the policy's characterization of the "initial clock-in" as the "start of an employee's shift" (ECF #16-1, § 1.2.1), taken with the mandate that employees work immediately from this time until clock out (*id.* at § 1.1.1), and further coupled with the rounding mechanisms that clip compensable time at the beginning (up to six minutes) and end (1-3 minutes past shift), directly leads to a net negative impact, and, hence, contradicts the FLSA's requirement that employees be paid for all hours worked. In short, Plaintiff's

8

Complaint alleges that Defendant's timekeeping policies and practices, whether as specifically described in Policy HR-53, as implemented in practice, coupled with Defendant's overall time directives and rounding system result in employees not being paid for all hours worked, including overtime.  In short, a claim is stated.

## IV.    APPLICABLE LAW & ARGUMENT

### A.    Standard of Review on Motion to Dismiss

When deciding a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled material allegations in the complaint as true. *United States, ex rel. Ibanez v. Bristol-Meyers Squibb Co*., 874 F.3d 905, 914 (6th Cir. 2017); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 548 (2007). But the concept of facial plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [of liability or damages.]" *Id.* "A well-pleaded complaint may proceed 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Houser v. Powerdot, Inc.*, No. 1:21-cv-915, 2022 U.S. Dist. LEXIS 239410, at *9 (N.D. Ohio July 11, 2022) (quoting *Twombly,* 550 U.S. at 556). Applying these well-established standards, Plaintiff responds below *seriatim* to Defendant's Motion.

### B.    Plaintiff's Complaint Adequately Sets Forth Sufficient Operative Facts to Support Plaintiff's Claims

#### 1.    Plaintiff's Complaint sufficiently alleges, and MetroHealth confirms, that Defendant non-neutrally rounds time

As discussed above, Defendant materially grounds its motion on Policy HR-53 (ECF #16-1).  But, as also shown, that argument (down to Defendant's invention of the supposed

"grace period" term found nowhere in the Policy) really is nothing more than an attempt to controvert the allegations of the Complaint:  namely that Defendant's *actual* time rounding and/or editing policies and practices that, over a period of time, result in the failure to compensate employees for all hours worked. (*See, e.g.,* Compl. ¶¶ 25-39). Plaintiff plainly asserts that the *actual application* of Defendant's timekeeping system is unlawful, and not just the Policy but, as discussed, the entirety of MetroHealth's "time rounding and/or editing policy, *and time manipulation practices in conformity with this policy*...[that] led to less time paid than time worked." (Compl. ¶ 25 (emphasis added)). The Complaint further alleges this system was "willfully designed to pay less time work than time paid," was "rigged in Defendant's favor," and "virtually always rounds against Plaintiff," thereby violating 29 C.F.R. § 785.48(b) which only permits rounding if it "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." (*Id.* at ¶¶ 28, 29, 33). And, as also shown above and not to need repetition here, not only by solely concentrating on the Policy is Defendant attempting to misconstrue the Complaint (which is not limited to that Policy and to its effects, and it is the effects that matter not what a policy may say for an FLSA violation) but that Policy, actually *contributes* to the time-rounding in favor of MetroHealth to the detriment of its employees. Irrespective, however, and putting aside the mathematical result of how the policy works out, it is the Complaint's allegations of impermissible time rounding that govern.[2]

And the time rounding alleged here is indeed impermissible.  The Department of Labor regulations are clear: rounding practices are only permissible if they average out over time so that employees are fully compensated for all time actually worked. 29 C.F.R. § 785.48(b).

---

[2] Even if the Policy could be read or interpreted to support Defendant's view, if a document supports "both parties' version of events," then the Court must "view the facts in the light most favorable to the plaintiff." *Nolan v. Detroit Edison Co*., 991 F.3d 697, 707-08 (6th Cir. 2021).

Plaintiff has alleged precisely such a systemic failure here – that Defendant's policies and practices, in their totality and as applied, do not average out and consistently result in underpayment. (Compl. ¶¶ 28, 29, 33). Although time clock rounding practices – rounding both up and down in a way that averages out over time – are legal, rounding practices that ultimately benefit the employer and result in the underpayment of wages, as alleged here, are always illegal. *See, e.g., Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1076 (9th Cir. 2016); *Boone v. Primeflight Aviation Servs.*, No. 15-CV-6077, 2018 U.S. Dist. LEXIS 28000, at *21 (E.D.N.Y. Feb. 20, 2018). Courts around the country have thus recognized overtime violations where an employer rounded down time without evidence that the rounding practice averaged out to fully compensate employees for all time worked.[3]

Nor does Defendant's attempt to claim that the pre-shift clock-in is a permissible "grace period" change anything. Besides being a term nowhere in the Policy, a true grace period, to the extent contemplated by 29 C.F.R. § 785.48(a), applies when employees *voluntarily* arrive early or stay late and *do not engage in any work*. Plaintiff alleges – and Policy HR-53 confirms – the opposite: that employees *do, and are explicitly required to,* perform compensable work during these rounded-off periods at the beginning and end of their shifts. (Compl. ¶¶ 26, 27, 34). These allegations must be taken as true and hence Defendant's invocation of the supposed "grace period" from this single document (putting aside the totality of the alleged wrongful conduct) cannot support a motion to dismiss.

---

[3] *See also, e.g., Austin v. Amazon.com, Inc*., No. C09-1679JLR, 2010 U.S. Dist. LEXIS 45623, at *7-12, (W.D. Wash. May 10, 2010) (denying motion to dismiss because the FLSA "does not contemplate the situation where an employer allows rounding...but disciplines the employee when the rounding does not work to the employer's advantage."); *Chao v. Self Pride, Inc*., No. RDB 03-3409, 2005 U.S. Dist. LEXIS 11653, at *19 (D. Md. June 14, 2005) (finding violation where employer rounded down time without evidence that the rounding practice averaged out to fully compensate for time worked).

**2. An FLSA/ OMFWSA[4] Complaint adequately sets facts where defendant is presented with sufficient notice of the *prima facie* claim it is being asked to defend**

Defendant also argues that the Complaint lacks sufficient operative facts regarding the specific job tasks performed during the work time it deleted through its rounding (*see* ECF #16 at PageID ##93-95). However, the Federal Rules of Civil Procedure require only that the plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quotation omitted). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged, much less disproves what might be an affirmative defense that a defendant might put forward (here, that the time that was recorded was not compensable). *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Courts within the Sixth Circuit do not require extensively detailed factual pleading in the context of FLSA litigation, so long as a defendant is given sufficient notice of the *prima facie* claim that it is being asked to defend. *Dozier v. All. Glob. Sols., LLC*, No. 3:24-cv-00348, 2024 U.S. Dist. LEXIS 183647, at *9 (M.D. Tenn. Oct. 8, 2024) (citing *Roberts v. Corr. Corp. of Am.*, No. 3:14-CV-2009, 2015 U.S. Dist. LEXIS 82575, 2015 WL 3905088, at *7 (M.D. Tenn. June 25, 2015)

---

[4] Counts One and Two are addressed together in this section because "Ohio law incorporates the FLSA's definitions, standards, and principles for its ... overtime compensation provisions." *Gilbo v. Agment LLC*, N.D.Ohio No. 1:19-cv-00767, 2020 U.S. Dist. LEXIS 26031, at *17 (Feb. 14, 2020) (citing *Pineda v. Pit Columbus, LLC*, No. 2:17-cv-668, 2017 U.S. Dist. LEXIS 195288, 2017 WL 5900559, at *2 (S.D. Ohio Nov. 28, 2017)). As noted in *Mickens v. Sweet Twist Frozen Yogurt, LLC*, S.D.Ohio No. 2:20-cv-2244, 2021 U.S. Dist. LEXIS 97394, at *4 (May 24, 2021), there is one exception – O.R.C. § 4111.03 "permits the recovery of overtime wages but does not provide for liquidated damages." *See* Ohio Rev. Code § 4111.10(A); *see also Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007) (providing that Ohio law expressly incorporates the standards and principles found in the FLSA).

(collecting cases). All the *prima facie* elements of an FLSA overtime claim are plainly met here,[5] and an FLSA overtime claim is properly pled where the complaint alleges: "(1) the defendants were employers as defined by the statute, (2) [plaintiff] and other similarly situated employees regularly worked overtime without compensation, and (3) defendants knew that plaintiffs worked overtime and did not pay them for it." *Douglas v. Aspen Mgmt. USA, LLC*, No. 2:19-cv-5568, 2022 U.S. Dist. LEXIS 18548, at *9 (S.D. Ohio Feb. 2, 2022) (citation omitted). "'[E]xtensively detailed factual pleading is not required in the context of an FLSA claim, so long as a defendant is given sufficient notice of the *prima facie* claim that it is being asked to defend.'" *Hutt*, 2020 U.S. Dist. LEXIS 220748 at *10 (quoting *Roberts*, 2015 U.S. Dist. LEXIS 82575 at *27); *see also Gibbs*, 2022 U.S. Dist. LEXIS 227, at *5 (holding that courts in the Sixth Circuit do not require, *e.g.*, FLSA plaintiffs to identify a particular week during which overtime was not paid or to approximate the number of overtime hours); *Potts v. Nashville Limo & Transp., LLC*, No. 3:14-cv-1412, 2014 U.S. Dist. LEXIS 173206, at *7-8 (M.D. Tenn. Dec. 12, 2014) ("In general, FLSA plaintiffs are not required to plead with specificity the exact number of hours for which they seek compensation, the exact amount in controversy, or the exact times and dates on which the violations allegedly occurred.").[6]

---

[5] They are: (1) that an employer-employee relationship; (2) that the employer or its employees engaged in interstate commerce; (3) that the employees worked more than forty hours in a workweek; and (4) that overtime was not paid.  *Gibbs v. Sedgwick Claims Mgmt. Servs.*, No. 2:21-cv-2153-SHM-cgc, 2022 U.S. Dist. LEXIS 227, at *5 (W.D. Tenn. Jan. 3, 2022) (citation omitted).

[6] *See also, e.g., Pope v. Walgreen Co.*, No. 3:14-CV-439, 2015 U.S. Dist. LEXIS 12960, at *11-12 (E.D. Tenn. Feb. 4, 2015) (to require such "would, again, be rigidly harsh and inconsistent with *Iqbal* and *Twombly*."); *Miller v. AT&T Corp.*, No. 1:13-CV-01422, 2013 U.S. Dist. LEXIS 146037, at *4-5 (N.D. Ohio Oct. 9, 2013) (holding that allegations that the plaintiff "regularly worked more than 40 hours a week without compensation" provided the defendants with "sufficient notice of the allegations to form a response").

13

Defendant's Motion and Answer each demonstrate that Defendant has indeed been provided sufficient allegations to understand Plaintiff's FLSA / OMFWSA claims and that Plaintiff has set forth sufficient allegations to meet a *prima facie* showing. Defendant clearly understands that Plaintiff is bringing a claim for unpaid overtime pursuant to 29 U.S.C. §§ 207, 216, based on an unlawful time rounding policy and practice (Compl. ¶¶ 24-39). Defendant understands that Plaintiff alleges that an employment relationship existed between Plaintiff and Defendant (Compl. ¶¶ 16-20), and in fact, Defendant admits the existence of this relationship (Answer ¶¶ 16-20). Plaintiff clearly alleges that she and other similarly situated employees were classified as non-exempt (Compl. ¶ 18; Answer ¶ 18), regularly worked more than forty (40) hours in a single workweek (Compl. ¶ 22; Answer ¶ 22), and that Defendant failed to pay them overtime at a rate of one and one-half times their regular rate of pay for all hours worked over forty (40) due to its rounding policy and practices (Compl. ¶¶ 23, 25-29, 33-34). Crucially, Plaintiff pleads that she and other employees "performed their actual, principal job duties when they clock in at the beginning of the workday, and until they clock out at the end of the workday" (Compl. ¶¶ 26, 34). This is not a vague assertion; it directly ties the uncompensated time to the performance of core job functions while clocked in. Defendant's own cited policy, Policy HR-53, acknowledges that employee shifts start when they clock in, and that employees are "expected to be at their workstation and ready to start their duties" at this time (*see* ECF #16-1, §§ 1.1.1, 1.2.1), aligning with Plaintiff's specific allegation that work commences immediately upon clocking in. Thus, the uncompensated time resulting from rounding is alleged not for non-compensable activities, but for time spent on the very duties for which employees were hired. These allegations, taken as true, satisfy the pleading standards articulated by the Sixth Circuit and provide Defendant with more than fair notice of the claims against it.

14

**C.**   **Defendant's Reliance on *Forrester*, and Related Case Law, is Misplaced as this Case Concerns Unlawful Time Rounding, not the Compensability of Preliminary or Postliminary Activities under the Portal-to-Portal Act**

Defendant's heavy reliance on *Forrester v. Am. Sec. & Prot. Serv. LLC*, No. 21-5870, 2022 U.S. App. LEXIS 12959 (6th Cir. May 13, 2022), is a red herring. *Forrester* involved whether certain alleged *off-the-clock* pre-shift activities were non-compensable "preliminary" activities under the Portal-to-Portal Act, 29 U.S.C. § 254, as interpreted by *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014).[7] The Sixth Circuit affirmed dismissal in *Forrester* because the complaint lacked sufficient factual detail about the specific nature of the alleged preliminary *off-the-clock* activities. *Forrester*, 2022 U.S. App. LEXIS 12959, at *4-5.

This case is entirely different. The Complaint does not focus on whether "preliminary" off-the-clock activities (such as *Forrester's* "pass down" activities) are compensable under the Portal-to-Portal Act. Instead, it alleges that MetroHealth's unlawfully rounded time that was on-the-clock work done by employees after they were clocked into Defendant's timekeeping system – which is how MetroHealth tracks time worked. (Compl. ¶¶ 25-27, 33-34). The Complaint alleges that Plaintiff and others clocked in, immediately began performing their principal job duties, and continued working until they clocked out, but were not paid for all this on-the-clock time due to Defendant's unlawful rounding system. (Compl. ¶¶ 26, 34). This constitutes an unlawful time-rounding practice, as recognized by 29 C.F.R. § 785.48(b).

Defendant recognizes this distinction but instead tries to draw an unwarranted negative inference that simply controverts the Complaint: "[p]resumably, this omission is intentional: If Plaintiff alleged what 'work' she was performing before her shift, it would inevitably be different

---

[7] A copy of the nine-page *Forrester* complaint is attached as Exhibit A. It clearly alleges no "rounding" violation, does not cite the C.F.R. §§ 785.48(b), 785.13, 785.11, applicable here, and explicitly states that the discussed "pass down duties" were not even performed on the clock as employees were not *allowed* to clock in during this time. (Ex. A at PageID ##3-5).

from the 'work' of the thousands of other employees she seeks to represent." (ECF #16 at PageID ##94-95 (citing *see Clark v. A&L Homecare & Training Ctr.*, 68 F.4th 1003, 1011 (6th Cir. 2023)). Plainly, a defendant cannot controvert what is claimed in a complaint by inventing hypotheticals of what "presumably" was not stated. Rather, Plaintiff has clearly alleged that she and other employees performed their "actual, principal job duties" from the moment they clocked in until they clocked out (Compl. ¶ 34) and that Defendant's rounding system is not neutral and "virtually always rounds against" its employees, resulting in less time paid than time worked. (Compl. ¶ 29, 33).[8] In short, Plaintiff has properly pled a claim based on an unlawful time rounding practice that results in the failure to pay for all hours worked performing actual job duties based explicitly on § 785.48(b), which were recorded by the timekeeping system Defendant utilizes to track compensable hours worked.

### D. Plaintiff has Adequately Set Forth a Claim for Untimely Payment of Wages Pursuant to O.R.C. § 4113.15(A) (Count Three)

Defendant contends Plaintiff has failed to set forth a claim for violation of O.R.C. § 4113.15(B), writing that the statute "expressly applies only to wages that are not in dispute." (ECF #16 (citation omitted but addressed below)). For present purposes, Plaintiff does not dispute Defendant's interpretation of subsection (B). But Plaintiff is **not bringing** a claim under subsection (B) of O.R.C. § 4113.15. Plaintiff's claim is explicitly and only brought under subsection (A). (Compl. ¶¶ 92-101 (specifying "Plaintiff brings this claim for violation of Ohio

---

[8] Defendant also cites *Meek v. SkyWest, Inc*., 562 F. Supp. 3d 488 (N.D. Cal. 2021), and *Howard v. Post Foods, LLC*, No. 1:19-cv-570, 2022 U.S. Dist. LEXIS 166029 (W.D. Mich. Sep. 14, 2022), but they are inapposite: the former was at class certification and not upon a motion dismiss while the latter was at summary judgment. In fact, *Howard actually supports denying dismissal* inasmuch as the court noted it refused to grant defendant's initial motion to dismiss based on the "plausible claim" that all employees were affected by defendant's alleged unlawful policies. 2022 U.S. Dist. LEXIS 166029, at *37-38 ("But what suffices to allege a plausible claim [for the purposes of a motion to dismiss] does not determine what suffices to defeat a motion for summary judgment"), 46-47.

law, O.R.C. § 4113.15(A)" and expressly omitting subsection (B) throughout the Complaint).

Subsection (A), which is known as the prompt pay provision, does not contain the limitation set

forth in subsection (B) regarding "undisputed" wages. Rather, subsection (A) specifically

provides that:

> Every employer doing business in this state shall, on or before the first day of
> each month, pay all its employees the wages earned by them during the first half
> of the preceding month ending with the fifteenth day thereof, and shall, on or
> before the fifteenth day of each month, pay such employees the wages earned by
> them during the last half of the preceding calendar month.

O.R.C. § 4113.15(A).

While Plaintiff recognizes that courts have gone both ways on the issue, *see, e.g.* (and as

cited by Defendant) *Lower v. Electronic Data Systems Corp.*, 494 F.Supp.2d 770, 775 (S.D. Ohio

2007); *Bobnar v. AstraZeneca Pharms. LP*, 758 F. Supp. 3d 690, 2024 U.S. Dist. LEXIS 214549,

at *100-01 (N.D. Ohio 2024); *Baum v. Intertek Testing Servs.,* No. 1:13CV1347, 2013 U.S. Dist.

LEXIS 173039, at *10-12 (N.D. Ohio Dec. 10, 2013); many other courts have allowed this

subsection (A) claim. That is, even if a defendant contends that the wages are in dispute, and thus

O.R.C. § 4113.15(B) would not apply, subsection (A) "would [still allow] the recovery of unpaid

wages if Plaintiff could prove a violation of the FLSA" or Ohio wage law. *Smith v. Local

Cantina, LLC*, No. 2:20-cv-03064, 2022 U.S. Dist. LEXIS 73598, at *5 (S.D. Ohio Apr. 19,

2022). Violation of any other wage statute, such as the FLSA or Ohio's overtime law,

automatically results in a failure to pay wages promptly, creating a cause of action under

subsection (A). *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS

97576, at *4-5 (S.D. Ohio May 24, 2021) ("an employee may sue for any wages due under

another law but not timely paid under the Prompt Pay Act"); *Craig v. Bridges Bros. Trucking

LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016) (recognizing that the prompt pay act claim "rises and

17

falls with [the] FLSA and Ohio Overtime claims."); *Local Cantina*, 2022 U.S. Dist. LEXIS 73598, at *5 ("the Prompt Pay Act requires employers to timely pay wages owed for any reason, whether statutory or otherwise"); *Oglesby v. FedEx Ground Package Sys.*, No. 3:20-cv-346, 2023 U.S. Dist. LEXIS 49178, at *12 (S.D. Ohio Mar. 22, 2023) (citing *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 11743, at *6 (S.D. Ohio, Jan. 22, 2021) ("any violation of an underlying wage and hour law, including the FLSA, warrants class certification under O.R.C. § 4113.15, assuming Rule 23's requirements are met")) (sustaining motion for Rule 23 certification); *Parks v. Cent. USA Wireless, LLC*, No. 1:17-cv-448, 2019 U.S. Dist. LEXIS 167502, at *6 (S.D. Ohio Sept. 29, 2019) ("Defendants do not dispute the general proposition of law that a federal overtime violation translates into a state prompt pay violation.").[8]

In short, Plaintiff does not bring a claim for liquidated damages under subsection (B) of O.R.C. § 4113.15, the sole basis for Defendant's motion and the only provision that requires there to not be a dispute. Plaintiff's claim arises solely under subsection (A), which, again, allows recovery of wages under the Ohio Prompt Pay Act that were paid late for any reason, including as a result of FLSA or Ohio overtime violations. Defendant's motion to dismiss Count Three should therefore be denied.

### E.    Plaintiff Demonstrably Pleads Willfulness (Count Four)

Defendant seeks dismissal of Count Four – a civil claim for criminal damages brought pursuant to O.R.C. § 2307.60[9] – solely based upon Defendant's claim that Plaintiff has failed to

---

[9] Plaintiff's claim for civil damages pursuant to O.R.C. § 2307.60 (Count Four) is predicated on Defendant's willful violation of the FLSA. Courts have recognized that plaintiffs may bring claims under this Ohio statute based on willful FLSA violations. Notably, Defendant does not challenge Plaintiff's fundamental ability to bring such a claim under O.R.C. § 2307.60 if a willful FLSA violation is established. Instead, Defendant's sole basis for seeking dismissal of this count is its contention that Plaintiff has failed to sufficiently allege willfulness. As demonstrated below, Plaintiff's Complaint contains ample factual allegations to support a

sufficiently allege willfulness. (ECF #16 at PageID ##102-03.) Contrary to Defendant's assertions, Plaintiff's Complaint clearly sets forth allegations supporting Plaintiff's claim of willfulness sufficient that Defendant's argument should be rejected.

Courts in the Sixth Circuit have held that, so long as an FLSA defendant's alleged scheme is described in some detail, general assertions of willfulness create a plausible claim. In *Mabry v. Directv, LLC*, for example, it was held that "detailed allegations about the Defendants' implemented policies allegedly intended to evade the FLSA 'does more than make the conclusory assertion that a defendant acted willfully.'" No. 3:14CV-00698-JHM, 2015 U.S. Dist. LEXIS 125685, at *17-18 (W.D. Ky. Sep. 21, 2015) (quoting *Doucette v. DIRECTV, Inc.,* No. 2:14-cv-02800-STA-tmp, 2015 U.S. Dist. LEXIS 64517, at *16 (W.D. Tenn. May 18, 2015)); *accord Acosta Colon v. Wyeth Pharm. Co*., 363 F. Supp. 2d 24, 29, 29 (D.P.R. 2005) ("[T]o make a factual finding regarding whether defendant's actions were willful is inappropriate at a motion to dismiss stage in the proceedings.").

Courts are reluctant, even when some plaintiffs plead minimal facts asserting willfulness, to dismiss such allegations at this early stage of the case. *See, e.g., Miller v. AT&T Corp*., No. 1:13-cv-01422, 2013 U.S. Dist. LEXIS 146037, at *6 (N.D. Ohio Oct. 9, 2013) (denying dismissal despite defendant's argument plaintiff was merely "sprinkling his complaint with the term 'willful'"); *Walsh v. Americare Healthcare Servs.,* No. 2:21-CV-5076, 2023 U.S. Dist. LEXIS 44991, at *14-15 (S.D. Ohio Mar. 16, 2023) (willfulness arguments are "better suited to the determination of whether there is a genuine issue of material fact regarding willfulness."); *Maynard v. Modern Industries*, No. 18-12523, 2019 U.S. Dist. LEXIS 98243, at *9 (E.D. Mich. June 12, 2019) ("Statutes of limitations are affirmative defenses, not elements of a cause of

plausible claim of willfulness.  *See, e.g., Garner v. Clev. Clinic Found*., 735 F. Supp. 3d 867, 881-82 (N.D. Ohio 2024).

action… Defendant has raised the affirmative defense that non-willful violations of the FLSA are subject to a two-year statute of limitations. The parties can now litigate the issue.")

Here, Plaintiff's allegations are more than generic allegations (*see* ECF #16 at PageID #102) and, unlike the cases cited by Defendant, absolutely and entirely plead Defendant's "state of mind." (*Id.* (citing *Scheck v. Maxim Healthcare Services*, 333 F.Supp.3d 751,758-59 (N.D. Ohio 2018)). Plaintiff's Complaint sets forth specific, concrete examples demonstrating Defendant's state of mind, intentionality, and willfulness, including that, *first*, Defendant physically posted the overtime notices required to be posted under both Ohio law and the FLSA, which each contain language outlining Defendant's overtime compensation requirements, but that it nevertheless engaged in rounding and/or editing policies, and time manipulation practices in conformity with these policies, that led to less time paid than time worked. (Compl. ¶¶ 46-49). Ohio and federal law require that Defendant post a notice explaining the overtime provisions of the FLSA in a conspicuous place in all of its establishments so as to permit employees to readily read it.[10] By complying with the federal and state posting requirements, but nevertheless by not paying overtime compensation as explicitly required by these overtime payment notices, Plaintiff

---

[10] As noted in Plaintiff's Complaint (ECF #1 ¶ 46), O.R.C. § 4111.09 provides that "[e]very employer subject to sections 4111.01 to 4111.17 of the Revised Code, or to any rules issued thereunder, shall keep a summary of the sections, approved by the director of commerce, and copies of any applicable rules issued thereunder, or a summary of the rules, posted in a conspicuous and accessible place in or about the premises wherein any person subject thereto is employed." As approved by the Director of Commerce, this conspicuously-placed posting includes the language: "**OVERTIME** … [a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours in excess of 40 hours in one work week..." *See, e.g.,* https://com.ohio.gov/static/documents/2023MWPoster.pdf (emphasis original) (last accessed Feb. 3, 2025) (emphasis original). In addition, federal law requires employers subject to the FLSA's wage provisions, such as Defendant, to post, and keep posted, a notice explaining the overtime provisions of the FLSA in a conspicuous place in all of their establishments so as to permit employees to readily read it, which includes the language that the employer must pay "**OVERTIME PAY**" at "[a]t least 1½ times the regular rate of pay for all hours worked over 40 in a workweek." (ECF #1 ¶ 47) (citing https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/minwagep.pdf (last accessed Feb. 3, 2025) (emphasis original)).

alleges that Defendant indisputably knew of the overtime requirements of the FLSA (or acted recklessly when it failed to pay overtime), but failed in its obligation when pay was due. (*Id.*) Defendant, in its Answer, admits that it "complies with all notice posting requirements under the FLSA and Ohio law" (Answer ¶ 48), yet still failed to properly pay overtime as those very notices mandated, further underscoring its willfulness and intentionality in avoiding paying all overtime owed.

*Second*, Plaintiff's Complaint asserts that Defendant failed to keep accurate records required by the FLSA. This is important because "[t]he Sixth Circuit has decided that an employer's recordkeeping practices may 'corroborate an employee's claims that an employer acted willfully in failing to compensate for overtime.'" *Gibbs*, 2022 U.S. Dist. LEXIS 227, at *12 (quoting *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002)); *Bey v. WalkerHealthCareIT, LLC*, No. 2:16-cv-1167, 2018 U.S. Dist. LEXIS 72819, at *15 (S.D. Ohio May 1, 2018) ("courts have held that allegations of recordkeeping violations may bolster a plaintiff's allegations of willfulness"). Allegations, like those in Plaintiff's Complaint ¶¶ 40-43, including that Defendant failed to keep accurate records, and in fact intentionally transmitted post-edited, rounded, modified, and inaccurate and/or incomplete records in an effort to directly reduce Defendant's labor costs, can satisfy the plausibility requirement in the face of a motion to dismiss. *See Gibbs*, 2022 U.S. Dist. LEXIS 227, at *12 (citing *see Dowd v. DirecTV, LLC*, Civil Action No. 14-cv-14018, 2016 U.S. Dist. LEXIS 36, 2016 WL 28866, at *6 (E.D. Mich. Jan. 4, 2016); *Larson v. Rush Fitness Corp.*, No. 3:12-cv-109, 2013 U.S. Dist. LEXIS 190874, 2013 WL 11328590, at *1 (E.D. Tenn. Dec. 10, 2013); *Monroe v. FTS USA, LLC*, No. 2:08-cv-02100-BBD-dkv, 2008 U.S. Dist. LEXIS 116643, 2008 WL 2694894, at *3 (W.D. Tenn. July 9, 2008)).

*Third*, the Complaint alleges that through supervisors and managers, Defendant *knew* that Plaintiff and others were working the time for which they were not paid as a result of Defendant's time-keeping, time recordation, and subsequent time rounding and editing, and thus Defendant's actions were deliberate and willful within the meaning of the FLSA. (Compl. ¶¶ 32, 49-50). Indeed, by physically deducting time worked in the timekeeping system on a daily basis, in an intentional attempt to reduce labor costs (*id.* at ¶¶ 28, 43), Defendant's supervisors and managers knew Defendant was paying less time than was owed. Plaintiff's Complaint outlines Defendant's record keeping requirements, including those contained within 29 U.S.C. § 211(c) and related C.F.Rs., and states that "at the time that the hours worked by Plaintiff …were transmitted to payroll for compensation purposes, Defendant willfully and intentionally transmitted post-edited, rounded, modified, and inaccurate and/or incomplete records … which had the direct effect of reducing Defendant's labor costs to the detriment of Plaintiff" and other affected employees. (*Id.* at ¶¶ 40-43). Accordingly, as Plaintiff has sufficiently pled that Defendant failed to keep accurate records, especially in light of the deduction of time worked by MetroHealth personnel, Defendant's motion on this point should be denied on this basis alone. *See Stein v. HHGREGG, Inc*., 873 F.3d 523, 538 (6th Cir. 2017) (reversing dismissal of willful FLSA violations where plaintiffs alleged that defendants' managers "were aware of and tacitly or knowingly approved of the practices at issue.").

*Fourth,* and finally, Plaintiff's Complaint alleges how MetroHealth is a highly, legally sophisticated employer with very clear notice of federal and state overtime compensation payment requirements. (Compl. ¶ 45). MetroHealth maintains an in-house legal team as well as outside counsel. Courts recognize that where, as here, defendant is a "sophisticated business that employs many people who are covered by the wage and hour laws[, a] reasonable juror could

infer that [defendant] knew its conduct was prohibited by law." *Gonzalez v. Rite Aid of New York, Inc*., 199 F. Supp. 2d 122, 134 (S.D.N.Y. 2002). *See also, e.g., Jensen v. Univ. Properties*, No. 2:05-cv-172 TC, 2007 U.S. Dist. LEXIS 5170, at \*11-12 (D. Utah Jan. 24, 2007) (finding defendant's FLSA violation willful where the defendant was a sophisticated and knowledgeable employer who is familiar with the requirements of the FLSA). Defendant even *fails* to address these allegations in its Answer. (Answer ¶ 45). Rather, Defendant relies solely upon its conclusory denial that no FLSA Collective or State Law Class exists. (*Id*.)

Not surprisingly, while Defendant cites to the decision in *Garner v. Clev. Clinic Found*., 735 F. Supp. 3d 867 (N.D. Ohio 2024) throughout its brief, it omits this case in its analysis here. In *Garner*, the court examined willfulness allegations virtually identical to those presented here—not surprising since the undersigned counsel are the Plaintiffs' counsel in *Garner*. In denying defendant's motion to dismiss, the court held plaintiff's allegations that defendant "…knew its pay practices violated the FLSA, yet continued to engage in the practice. … sufficiently plead a claim for willfulness…" Therefore, the court denied defendant's motion to dismiss. 735 F. Supp. 3d at 884. Plaintiff thus more than plausibly pleads willfulness within the meaning of the FLSA, and Defendant's motion to dismiss on this point should be denied.

**V.    CONCLUSION**

For all the reasons set forth above, Defendant's motion to dismiss should be denied.

*Respectfully Submitted,*

*s/ Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
11925 Pearl Rd., Suite 308
Strongsville, Ohio 44136
Telephone: (216) 912-2221

jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

Seth R. Lesser (NY SL5560)*
Christopher M. Timmel (NY CT9831)*
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
seth@klafterlesser.com
christopher.timmel@klafterlesser.com

*Attorneys for Plaintiff, proposed FLSA Collective Action Plaintiffs, and proposed Fed. R. Civ. P. 23 Class Counsel*

* Proceeding *Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.

*s/ Ryan A. Winters*

Ryan A. Winters (0086917)

## <u>CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION REQUIREMENTS</u>

I, undersigned filing counsel, state that this motion has not yet received a track

assignment, but that the above Memorandum in Support complies with the twenty-five (25) page

limitation set forth in the Court's May 19, 2025 Order.

*s/ Ryan A. Winters*

Ryan A. Winters (0086917)
