UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER BOWMAN, | ) | CASE NO.  1:25-cv-00256 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| METROHEALTH SYSTEM, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Before the Court is Defendant MetroHealth System's ("MetroHealth") Motion to Dismiss

Plaintiff Jennifer Bowman's ("Bowman") Complaint in its entirety.  (Doc. 16.)  Bowman

opposed (Doc. 20), and MetroHealth replied (Doc. 21).  For the reasons stated herein, the Motion

to Dismiss is GRANTED in part and DENIED in part.

## I.    BACKGROUND

### A.    Factual Allegations

MetroHealth is a healthcare provider operating in the greater Cleveland area and employs

600 doctors, 1,700 nurses, and almost 9,000 other workers.  (Doc. 1 at 4, ¶ 11.)[1]  Bowman is a

medical practice assistant.  (*Id.* at 4, ¶ 17.)  Bowman alleges MetroHealth failed to pay her, and

other employees similarly situated, for all hours worked because of MetroHealth's "time editing"

or "rounding" practices and policies in violation of the Fair Labor Standards Act (FLSA"), 29

U.S.C. § 201, *et seq.*  (*Id.* at 6, ¶ 24.)  Specifically, she alleges MetroHealth rounded and edited

clock-in and clock-out times which resulted in Plaintiff and others performing their "principal

activities of their jobs" without compensation.  (*Id.* at 6, ¶ 26.)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document
and PageID# rather than any internal pagination.

The time editing and rounding allegations relate in part to MetroHealth's clock-in and clock-out procedures documented in a "System Policy." (Doc. 16-1 (hereinafter "Timekeeping Policy").)[2] Per the Timekeeping Policy, non-exempt hourly employees must swipe their ID badge at the beginning and end of their shifts. (*Id.* at 107.) As it relates to clocking-in, the Timekeeping Policy states:

> 1.2. Initial Clock-In:
>
> 1.2.1. For the initial clock-in at the start of an employee's shift, the system permits an employee to swipe their badge, or clock in using a computer, no earlier than six (6) minutes prior to the start of their shift. Those six minutes are rounded forward, and the employee is paid beginning at the scheduled start time. Attempting to swipe (or clock) in any earlier results in the swipe being rejected.
>
> 1.2.2. Likewise, for the initial swipe-in only, the system permits an employee to swipe in up to six (6) minutes after the start time, and the swipe rounds back to the start time for payroll purposes.

(*Id.* at 108.) As it relates to clocking out, the Timekeeping Policy states:

> 1.3. Subsequent Time Swipes:
>
> 1.3.1. For all other swipes, including swiping (or clocking) out, rounding occurs both forward and backward, based on a three (3)-minute midpoint.
>
> 1.3.1.1. Where an employee swipes out 1-3 minutes early, the swipe is considered for payroll purposes as occurring at the end of the shift. Where an employee swipes out 4-6 minutes early, there is a .10 reduction of time recorded and an employees' pay is reduced accordingly.

---

[2] In her Complaint, Bowman never specifies the practices or policies relating to her time rounding allegations. Nor does she attach the Timekeeping Policy. In its Motion to Dismiss, MetroHealth attached the Timekeeping Policy. (Doc. 16-1.) On a Rule 12(b)(6) motion, a court typically only considers the complaint, and any exhibits attached thereto. However, a court may also consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). The Timekeeping Policy is routinely referenced throughout the Complaint and is central to the claims relating to the FLSA allegations. Therefore, the Timekeeping Policy can be considered.

> 1.3.1.2. Likewise, swiping out 1-3 minutes late results in the swipe rounding back to the scheduled end of shift. Swiping out 4-6 minutes past the scheduled end of shift results in additional time recorded and additional pay of .10 of an hour.

(*Id.*) Hourly employees are not permitted to work any hours outside of those designated on their scheduled workday, which includes any exception to the clock-in and clock-out procedures described above. (*Id.* at 108.)

According to the Complaint, the Timekeeping Policy is "rigged" in MetroHealth's favor and was designed to willfully pay less time than worked. (Doc. 1 at 7, ¶ 29.) As a result of the Timekeeping Policy, among other policies and practices, MetroHealth failed to pay employees for the full time they worked and shortchanged eligibility for overtime pay. (*Id.* at 8-9, ¶¶ 33-34.)

## B. Procedural History

On February 10, 2025, Bowman commenced this action. (Doc. 1.) The Complaint asserted five claims: (1) a violation of the FLSA, 29 U.S.C. § 216(b) (Count One); (2) violations of the Ohio Minimum Fair Wage Standards Act, R.C. §§ 4111.03, 4111.10 (Count Two); (3) a violation of R.C. § 4113.15 for failing to pay a semimonthly wage on time (Count Three); (4) a violation of R.C. § 2307.60 for damages for criminal acts (Count Four); and (5) unjust enrichment under Ohio law (Count Five). (*Id.* at 20-27, ¶¶ 74-116.)

Bowman brings all claims as a class action under Rule 23 of the Federal Rules of Civil Procedure. (*Id.*) Bowman proposes to form two classes, one relating to the alleged FLSA violations (the "FLSA Collective") and one relating to the alleged Ohio state law violations (the "State Law Class"). As it relates to the FLSA Collective, Bowman proposes the following group of individuals should receive notice:

All current and former non-exempt (including but not limited to commission-based,

production-based, hourly, and salaried) employees of Defendant during the period of three years preceding the commencement of this action to the date of judgement in this action who worked overtime hours during one or more workweeks and who, during any one overtime workweek, were not paid for all minutes or hours recorded in Defendant's timekeeping system due to any time editing and/or time rounding.

(*Id.* at 15, ¶ 54.)  And as it relates to the State Law Class, Bowman proposes the following group of individuals should receive notice:

All current and former non-exempt (including but not limited to commission-based, production-based, hourly, and salaried) employees of Defendant during the period of six years preceding the commencement of this action to the date of judgement in this action who worked overtime hours during one or more workweeks and who, during any one overtime workweek, were not paid for all minutes or hours recorded in Defendant's timekeeping system due to any time editing and/or time rounding.

(*Id.* at 18, ¶ 67.)

On April 18, 2025, MetroHealth moved to dismiss the Complaint.  (Doc. 16.)  Bowman opposed, and MetroHealth replied.  (Docs. 20, 21.)

## II.     ANALYSIS

### A.     Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion tests whether the complaint meets this standard.  To survive a Rule 12(b)(6) motion for failure to state a claim, the complaint must make out a plausible legal claim, meaning the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Plausibility does not require any specific probability of success, but it does demand "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

When courts evaluate whether a complaint states a plausible claim, they must accept all factual allegations as true. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)).  Courts must also draw all reasonable inferences in favor of the plaintiff, and they must generally construe the complaint in the light most favorable to the plaintiff.  *Id.*  Courts do not accept legal conclusions or other conclusory allegations as true, *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)), and courts need not make unwarranted factual inferences, *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

### B.    FLSA Claim (Count One)

The FLSA "requires employers to compensate employees at one and one-half times their 'regular rate' if they work over 40 hours per week." *Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 363 (6th Cir. 2019) (citing 29 U.S.C. § 207(a)(1)).  The FLSA also "imposes recordkeeping requirements on employers," meaning employers must record "overtime-eligible employees' daily and weekly hours, hourly rate of pay, daily or weekly straight-time earnings, and overtime pay, and total wages per pay period." *Id.* (citing 29 U.S.C. § 211(c)).  In this case, Bowman alleges MetroHealth violated the FLSA's overtime and recordkeeping mandates because of an illegal rounding practice where MetroHealth rounded clock in and clock out times.  (Doc. 1 at 6, ¶ 26.)  MetroHealth asserts two challenges to Bowman's FLSA claim: (1) the Complaint lacks any allegations of the compensable work Bowman (and others similarly situated) performed; and (2) the time rounding policy, including the Timekeeping Policy, is lawful.  (Doc. 16 at 93-97.)  Each is addressed in turn.

### 1.    Compensable Work

"[T]he FLSA established a minimum wage and overtime compensation for each hour

worked in excess of 40 hours in each workweek."  *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31, 135 S.Ct. 513, 190 L.Ed.2d 410 (2024).  To state an overtime claim under the FLSA, a plaintiff must allege: (1) an employer-employee relationship; (2) the employer or its employees engaged in interstate commerce; (3) the employee worked more than forty hours in a workweek; and (4) overtime was not paid.  *Dep't of Labor v. Am. Healthcare Servs., LLC*, 762 F.Supp.3d 666, 679 (S.D. Ohio 2025) (collecting cases).  Thus, as relevant here, a plaintiff must allege she *worked* more than forty hours in a *workweek*.

"But the FLSA did not define 'work' or 'workweek[.]'"  *Busk*, 574 U.S. at 31.  The Supreme Court took up that task in a series of decisions that produced an expansive definition of "work."  *Id.*  It "defined 'work' as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'"  *Id.* (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944)). "Workweek" was defined to "includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."  *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)).  These definitions proved too broad and produced a "flood of litigation."  *Id.*

In response, Congress enacted the Portal-to-Portal Act which specifically exempted FLSA liability (*i.e.*, made non-compensable) two work-related activities: (1) walking, riding, or traveling to or from the actual place of performance of the principal activity or activities which such employee is employed to perform and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any

particular workday at which he ceases, such principal activity or activities.  *Id.* at 32; 29 U.S.C. §
251(a); *see also In re Amazon.com, Inc., Fulfillment Ctr.*, 852 F.3d 601, 608-09 (6th Cir. 2017)
(recounting history of Portal-to-Portal Act).

The Portal-to-Poral Act did not change the Supreme Court's earlier definitions of "work"
or "workweek" "[o]ther than its express exceptions for travel to and from the location of the
employee's 'principal activity,' and for activities that are preliminary or postliminary to that
principal activity."  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005).
Rather, "the Portal-to-Portal Act narrowed the coverage of the [FLSA]."  *In re Amazon.com*, 852
F.3d at 607.  The "statute had no effect on the computation of hours that are worked 'within' the
workday."  *Alvarez*, 546 U.S. at 28.  Regulations promulgated by the Department of Labor
confirm this interpretation of the statute.  *See* 29 C.F.R. § 790.6(a) ("the Portal Act does not
affect the computation of hours worked within the 'workday' proper, roughly described as the
period 'from whistle to whistle,' and its provisions have nothing to do with the compensability
under the Fair Labor Standards Act of any activities engaged in by an employee during that
period").

The Portal-to-Portal Act's exemptions to FLSA liability posed new questions for courts,
including the interpretation of "activities which are preliminary to or postliminary to said
principal activity or activities."  *Busk*, 574 U.S. at 31.  "'[P]rincipal activity' refers to the activity
'an employee is employed to perform.'"  *In re Amazon.com*, 852 F.3d at 609 (quoting *Busk*, 574
U.S. at 31).  The Supreme Court has "interpreted the term 'principal activity or activities' to
embrace all activities which are an 'integral and indispensable part of the principal activities.'"
*Id.* at 33 (cleaned up) (quoting *Alvarez*, 546 U.S. at 29-30).  "An activity is [] integral and
indispensable to the principal activities that an employee is employed to perform if it is an

intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Busk*, 574 U.S. at 31; *see also* 29 CFR § 790.8(b) (2013) ("The term 'principal activities' includes all activities which are an integral part of a principal activity"); § 790.8(c) ("Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance"). Using this test, courts have found various work-related activities non-compensable under the FLSA as either a preliminary or postliminary activity. *See Alvarez*, 546 U.S. at 29-30 (considering whether time spent waiting to put on protective gear was compensable time); *Steiner v. Mitchell*, 350 U.S. 247, 252-53, 76 S.Ct. 330, 100 L.Ed. 267 (1956) (considering whether time spent showering and changing clothes was compensable time); *Mitchell v. King Packing Co.*, 350 U.S. 260, 262, 76 S.Ct. 337, 100 L.Ed. 282 (1956) (considering whether time spent sharpening knives was compensable time).

In cases where a plaintiff alleges an employer did not compensate employees for all compensable time performed immediately before or after their shifts in violation of the FLSA, the plaintiff must allege sufficient facts describing their principal work activities. *See Forrester v. Am. Sec. & Prot. Serv. LLC*, No. 21-5870, 2022 WL 1514905, 2022 U.S. App. LEXIS 12959 (6th Cir. May 13, 2022) ("to state a claim for relief, the complaint must allege facts that show [work performed before or after a shift] is compensable."). "After all, the FLSA doesn't require employers to pay for every minute employees are at work." *Id.* at *3. If a plaintiff fails to sufficiently allege their principal work activities, it cannot be determined if the alleged compensable time is exempted from the FLSA under the Portal-to-Portal Act. *Id.* at *5.

In *Forrester*, plaintiff's employer, American Security, required employees to arrive 10 to 15 minutes prior to the start of their scheduled shift and sometimes required employees to remain

10 to 15 minutes after their shift ended.  *Id.* at *2.  An employee sued arguing American Security did not compensate for this time, described as "pass down" time, despite employees performing "several shift-change duties."  *Id.*  The district court dismissed the complaint, and the Sixth Circuit affirmed.  *Id.*

To proceed on an FLSA claim, the "complaint must contain facts that show [the plaintiff] is entitled to compensation for the pass-down time."  *Id.* at *3.  Specifically, "to state a claim for relief, the complaint must allege facts that show pass-down time is compensable."  *Id.*  Relying on *Busk*, the Sixth Circuit explained that Congress exempted employers from FLSA liability for work-related activities that were "preliminary to or postliminary to" "principal activity or activities" which "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  *Id.* (citing *Busk*, 574 U.S. at 32-33).  Thus, under the Portal-to-Portal Act, time is non-compensable if the activities are "preliminary" or "postliminary" to the "principal activity or activities" which the employee is employed to perform.  *Id.* (quoting 29 U.S.C. § 254(a)).  Considering the Portal-to-Portal Act and *Busk*, the Sixth Circuit explained a plaintiff must allege what their "principal activities" are and must allege a description of what work was performed during the time a plaintiff alleges they were not properly compensated.  *Id.* at *4-5.  If a plaintiff does not present such allegations, a plausible FLSA claim has not been stated.  *Id.* at *6.

This is the primary argument MetroHealth makes here.  (Doc. 16 at 93.)  To MetroHealth, the FLSA provides for a private right of action against an employer by an employee when an employee has not been paid for *compensable time*.  (*Id.*)  Because a plaintiff is only entitled to payment for compensable time, a plaintiff must allege in the complaint the

nature of the work performed. (*Id.*) In support, MetroHealth primarily relies on *Forrester*. Here, to MetroHealth, the Complaint lacks sufficient allegations relating to what compensable work Bowman, and the other employees she brings her claims on behalf, performed. (Doc. 16 at 94.) MetroHealth cites portions of the Complaint which alleges Bowman and other employees "clocked in and performed the principal activities of their jobs" for which they were not compensated. (Doc. 1 at 6, ¶ 26.) And the Complaint alleges Bowman and other employees "regularly complete[d] tasks" which "constitute[d] part of their principal activities and/or are integral and indispensable to their principal activities before their shift starting time (and after shift ending times)." (*Id.* at 7, ¶ 27.) To MetroHealth, because the Complaint lacks allegations relating to the specific work Bowman and other employees performed, she has not alleged that work was compensable. (*Id.*)

Bowman argues her FLSA claim is distinguishable from the claim in *Forrester*, which did not consider a time rounding claim. (Doc. 20 at 183.) She argues her illegal time rounding claim is distinct from the "off-the-clock activities" claim the *Forrester* court considered. (*Id.*) According to Bowman, she is not seeking compensation for "off-the-clock" work activities performed prior to or after her shift, but instead, compensation for time spent after she clocked in which was illegally rounded to her detriment. (*Id.* at 183-84.) In essence, Bowman argues her claim is not subject to the Portal-to-Portal Act because she seeks compensation for work performed during her shift. (*Id.*)

The Portal-to-Portal Act made "activities which are preliminary to or postliminary to said principal activity or activities" non-compensable if the activities "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." Thus, the Portal-to-

Portal Act applies to work related activities which occur prior to or after a workday.  As the

Supreme Court explained, the Portal-to-Portal Act "had no effect on the computation of hours

that are worked 'within' the workday."  *Alvarez*, 546 U.S. at 29.  Regulations promulgated by the

Department of Labor explain:

> Under the provisions of section 4, one of the conditions that must be present before "preliminary" or "postliminary" activities are excluded from hours worked is that they 'occur either prior to the time on any particular workday at which the employee commences, or subsequent to the time on any particular workday at which he ceases' the principal activity or activities which he is employed to perform. *Accordingly, to the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of that section have no application.* Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted.

29 C.F.R. § 790.6(a) (emphasis added).

Here, Bowman alleges she clocked in for work and immediately began performing her

principal job duties—the job duties she was specifically hired to perform.  (Doc. 1 at 6, ¶ 26.)

She alleges clock in times and clock out times were inappropriately rounded, resulting in the

performance of principal job duties for which she was not fully compensated.  (*Id.*)  Critically,

she does not allege MetroHealth required her to come to work early to perform pre-shift

activities, nor does she allege MetroHealth required her to stay after her shift for post-shift

activities.  Bowman's allegations do not allege "preliminary" or "postliminary" work activities.

Thus, she does not seek compensation for off-the-clock activities that may be, or may not be,

compensable under the FLSA.[3]

---

[3] MetroHealth seizes on language in the Complaint where Bowman alleges she and others completed tasks which "constitute part of their principal activities and/or are integral and indispensable to their principal activities *before their shift starting times (and after shift ending times)*."  (Doc. 21 at 204) (emphasis in original).  To MetroHealth, this language clearly asserts a

In this way, *Forrester* is distinguishable.  2022 WL 1514905, 2022 U.S. App. LEXIS 12959, *3 (considering claim employer "didn't pay her or other employees for pass-down time"). In *Forrester*, plaintiffs sought compensation for time spent either preparing for their shift or finishing their shift for which they are not on the clock and are not compensated.  The question was whether the activities an employee is required to perform prior to or after their shift is compensable time under the FLSA.  That question turns on whether the activities are "preliminary" or "postliminary" to an employee's "principal activity or activities."  *Id.* at *3-4. If they are, it is not compensable time.  But this case does not present the same question the *Forrester* court considered.  *See also Howard v. Post Foods, LLC*, No. 19-cv-570, 2022 WL 4233221, 2022 U.S. Dist. LEXIS 166029, *37 (W.D. Mich. Sept. 14, 2022) (following *Forrester* and dismissing FLSA claim where plaintiff failed to allege "pre-shift and post-shift activities," there, putting on mandatory COVID-19 protective gear which allegedly increased pre- and post-shift time spent at work).

Bowman's claim does not seek compensation for potentially incidental activities she performed immediately before or after her shifts.  Instead, Bowman alleges she clocked in to perform her regular principal job duties and that time was inappropriately rounded.  She does not allege, like the plaintiff in *Forrester*, that MetroHealth required her to come early to her shift or stay late after her shift ended without compensating her.  MetroHealth does not require employees to get to work 10 to 15 minutes early, nor does it require employees to stay 10 to 15 minutes late, to perform some sort of function relating to their jobs.  When an employee clocks

---

claim that falls under the Portal-to-Portal Act, thus requiring the Court to determine if the work was compensable (*i.e.*, preliminary or postliminary to Bowman's principal activities).  But read in context, the allegation merely states Bowman and others performed work while clocked in prior to their "shift starting times."  This is consistent with Bowman's time rounding claim—she clocked in prior to her "shift starting time" but was not compensated due to the rounding policy.

in at MetroHealth, say 4 minutes early, that time is rounded forward such that the employee is not compensated for that time.

The question raised by the Complaint is whether an employee should be paid for those 4 minutes, or if MetroHealth's rounding is proper.  The question is not whether that time is "preliminary" work because, as alleged, Bowman immediately begins her principal job duties upon clocking in.  The test under *Busk* for considering whether this time is preliminary or postliminary, that is whether the employer could have eliminated the activities altogether without impairing the employees' ability to complete their work, does not fit these allegations.  Even if it did, that test would be satisfied here:  MetroHealth could not have eliminated the activities Bowman alleges she should have been compensated for because she immediately began her regular job duties upon clocking in.  *See Dozier v. All. Glob. Sol., LLC*, No. 24-cv-348, 2024 WL 4445714, 2024 U.S. Dist. LEXIS 183647, *12-13 (M.D. Tenn. Oct. 8, 2024) (in time rounding case, distinguishing *Forrester* by explaining complaint implies work was compensable because rounded hours were still recorded upon clocking in, inferring the rounded hours were normal work time removed from time sheets).

MetroHealth urges that—even if *Forrester* is distinguishable on the facts and legal theory—it still requires a plaintiff to plead compensable work activities, that is, the nature of the work performed.  (Doc. 21 at 204.)  Bowman has done so for purposes of satisfying Rule 8.  She immediately began performing her work duties, which she was hired to perform, upon clocking in.  (Doc. 1 at 6, ¶ 26.)

### 2.    Time Rounding Policy

Regulations promulgated by the Department of Labor guide employers' compliance with the FLSA.  As relevant here, "federal courts have long applied the Department's rounding rules

to FLSA claims." *Lott v. Recker Consulting, LLC*, No. 23-cv-489, 2025 WL 2550009, 2025 U.S. Dist. LEXIS 172452, *55 (S.D. Ohio Sept. 4, 2025) (citing *Corbin v. Time Warner Ent.- Advance/Newhouse P'ship*, 821 F.3d 1069, 1075 (9th Cir. 2016)). Under the DOL regulations, time rounding is "not illegal *per se*." *Rapp v. Forest City Techs., Inc.*, No. 20-cv-2059, 2021 WL 2982005, 2021 U.S. Dist. LEXIS 131540, *12 (N.D. Ohio July 15, 2021). A time rounding policy does not violate the FLSA if the time rounded is "to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour," and it "is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b); *see also Kurpan v. CNC Precision Machine, Inc.*, No. 23-cv-70, 2024 WL 3992299, 2024 U.S. Dist. LEXIS 155149, *10 (N.D. Ohio Aug. 29, 2024) ("Time rounding is a lawful practice where it does not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.") (citation omitted). Courts analyzing time rounding violations must determine if the policy is neutral on its face, and if no, whether the policy is neutral as applied. *Lott*, 2025 WL 2550009, 2025 U.S. Dist. LEXIS 172452, *56-57; *see also Houston v. St. Luke's Health Sys.*, 76 F.4th 1145, 1150 (8th Cir. 2023) (rounding policies must be "neutral, both facially and as applied") (quoting *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1288 (10th Cir. 2020)).

"If an employer's rounding practice does not permit both upward and downward rounding, then the system is not [facially] neutral." *Corbin*, 821 F.3d at 1077. A policy is not neutral as applied if an employer's rounding practice systematically favors an employer in a manner that results, over a period of time, in the failure to compensate employees for time worked. *Lott*, 2025 WL 2550009, 2025 U.S. Dist. LEXIS 172452, *58-59; *Houston*, 76 F.4th at 1150. "[N]eutral time clock rounding practices—rounding both up and down in a way that

averages out over time—are legal," but "rounding practices that ultimately benefit the employer and result in the underpayment of wages are always illegal."  *Rapp*, 2021 WL 2982005, 2021 U.S. Dist. LEXIS 131540, *13 (collecting cases).  Thus, "[c]ourts around the country have recognized overtime violations where an employer rounded down time without evidence that the rounding practice *averaged out* to fully compensate employees for the time worked."  *Id.* (collecting cases).

MetroHealth argues its timekeeping procedures, including the Timekeeping Policy, are entirely lawful.  (*Id.* at 95-97.)  MetroHealth stylizes its clock in procedure as a "grace period" and its clock out procedure as a neutral and lawful time rounding policy.  (*Id.*)  In contrast, Bowman argues the Complaint alleges the Timekeeping Policy, among other policies and practices at MetroHealth, is not neutral and does not average out to fully compensate employees for their time.  (Doc. 20 at 177-78.)  Bowman argues the Complaint sets forth that the Timekeeping Policy itself, and its application in practice, undercompensates employees.  (*Id.*)

At the motion to dismiss stage, Bowman's Complaint states a plausible claim that MetroHealth's timekeeping policy violates the FLSA.  The Complaint alleges MetroHealth's policy, over time, does not adequately compensate employees because of the operation of the Timekeeping Policy, among other MetroHealth policies and practices.  (Doc. 1 at 7-9, ¶¶ 29-33.)

C.    **State Law Claims (Counts Two through Five)**

1.    **Ohio Minimum Fair Wage Standards Act (R.C. §§ 4111.03, 4111.10) (Count Two)**

On May 19, 2025, the parties jointly stipulated to the dismissal of the Rule 23 class allegations in Count Two of the Complaint.  (Doc. 19.)  In it, they recognized another court in this District held claims under the Ohio Minimum Fair Wage Standards Act cannot be brought as a Rule 23 class action, and instead, must be brought as an opt-in collective.  *See Garner v.*

*Cleveland Clinic Found.*, No. 23-cv-2258 (N.D. Ohio filed Nov. 21, 2023) (Boyko, J.).

Accordingly, the parties jointly stipulated to the dismissal of the Rule 23 allegations in Count

Two barring any further judicial action from the Sixth Circuit Court of Appeals or the Supreme

Court of Ohio on this issue.  Bowman will continue to pursue Count Two as an opt-in collective

action only.  (*Id.*)

Notwithstanding the joint stipulation, MetroHealth argues the OMFWSA claim should be

dismissed for the same reasons the FLSA claim should be dismissed.  (Doc. 16 at 97.)  Both

parties agree federal courts analyze FLSA and OMFWSA claims under the same standards.

(Doc. 16 at 97; Doc. 20 at 180); *see Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501

(6th Cir. 2007) ("the [OMFWSA] expressly incorporates the standards and principles found in

the FLSA"); *Gilbo v. Agment LLC*, No. 19-cv-00767, 2020 WL 759548, 2020 U.S. Dist. LEXIS

26031, *17 (N.D. Ohio Feb. 14, 2020) ("Ohio law incorporates the FLSA's definitions,

standards, and principles for its minimum wage and overtime compensation provisions.").

Because the FLSA claim survives MetroHealth's Motion to Dismiss, so too does the OMFWSA

claim.

### 2. Semimonthly Payment of Wages (R.C. § 4113.15(A)) (Count Three)

Section 4113.15 of the Ohio Prompt Pay Act ("OPPA"), provides:

> (A) Every employer doing business in this state shall, on or before the first day of
> each month, pay all its employees the wages earned by them during the first half of
> the preceding month ending with the fifteenth day thereof, and shall, on or before
> the fifteenth day of each month, pay such employees the wages earned by them
> during the last half of the preceding calendar month. [. . .]

> (B) Where wages remain unpaid for thirty days beyond the regularly scheduled
> payday or . . . and no contest court order or dispute of any wage claim including the
> assertion of a counterclaim exists accounting for nonpayment, the employer, in
> addition, as liquidated damages, is liable to the employee in an amount equal to six
> per cent of the amount of the claim still unpaid and not in contest or disputed or
> two hundred dollars, whichever is greater.

The OPPA thus "requires employers in Ohio to pay their employees the preceding month's wages by the first day and fifteenth day of the month." *Bobnar v. AstraZeneca Pharms. LP*, 758 F.Supp.3d 690, 745 (N.D. Ohio 2024); *Brown v. Fukuvi USA Inc.*, No. 29294, 2022 WL 1514910, 2022 Ohio App. LEXIS 1493, *98 (Ohio Ct. App. May 13, 2022) ("Ohio's PPA requires employers to pay wages within certain times after they are earned").  If an employer violates the OPPA, § 4113.15(B) allows an employee to collect liquidated damages.  *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 577 (6th Cir. 2009) (discussing liquidated damages available under the OPPA), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016).  However, pursuant to § 4113.15(B), "a dispute accounting for nonpayment precludes the award of liquidated damages to a wage claimant." *Id.* at 577 (citation omitted); *Bobnar*, 758 F.Supp.3d at 745 ("the OPPA does not allow an employee to recover liquidated damages if the allegedly unpaid wages are in dispute"); *Baum v. Intertek Testing Servs.*, No. 13-cv-1347, 2013 WL 6492372, 2013 U.S. Dist. LEXIS 173039, *11 (N.D. Ohio Dec. 10, 2013) (holding § 4113.15 is "only applicable to employment situations where the wage amount is undisputed"); *Brown*, 2022 WL 1514910, 2022 Ohio App. LEXIS 1493, *102 ("An employer's dispute of entitlement prevents recovery of liquidated damages"); *Haines & Co., Inc. v. Stewart*, No. 2000CA138, 2001 WL 166465, 2001 Ohio App. LEXIS 597, *11 (Ohio Ct. App. Feb. 5, 2001) (holding that the "case constituted a contest over a wage claim" which means "the Prompt Pay Act [] does not apply to this case").

MetroHealth argues Bowman cannot maintain her OPPA claim because there is a "contest" or "dispute" over the wages allegedly owed.  (Doc. 16 at 100.)  To MetroHealth, § 4113.15(B) precludes an OPPA claim where there is a "contest" or "dispute of any wage claim." (*Id.*)  Because the Complaint pleads a dispute regarding the wages owed to Bowman,

MetroHealth argues the claim should be dismissed.  (*Id.* at 101.)

Bowman interprets the statutory scheme differently.  To Bowman, her claim arises under § 4113.15(A), not § 4113.15(B).  (Doc. 20 at 184.)  Bowman argues she can bring her claim solely under § 4113.15(A) which does not contain an exemption for wages that are in "dispute." (*Id.* at 185.)  That is, Bowman argues § 4113.15(A) and § 4113.15(B) are disjunctive and create separate claims.  (*Id.*)  Thus, she argues her claim under § 4113.15(A) is not subject to the exclusions in § 4113.15(B).  (*Id.* at 185-86.)  She explicitly waives any claim to damages under § 4113.15(B).  (*Id.*)  Bowman recognizes case law generally prohibits her from any liquidated damages claim under § 4113.15(B) but asserts her claim escapes dismissal because it is brought under § 4113.15(A).  (*Id.*)

Another court in this district recently addressed Bowman's argument.  *See Garner v. Cleveland Clinic Found.*, 735 F.Supp.3d 867, 880-81 (N.D. Ohio 2024).  In *Garner*, the court rejected a plaintiff's argument that their claim could survive dismissal because it was brought solely under § 4113.15(A) and did not seek liquidated damages under § 4113.15(B).  The *Garner* court reviewed federal and Ohio case law regarding § 4113.15 and concluded "Section 4113.15(A) defines the time frame in which an employer must pay its employees their wages earned and Section 4113.15(B) describes the liquidated penalty for not paying wages in the time proscribed by the statute."  *Id.* at 880 (quoting *In re Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.*, 517 F.Supp.3d 484, 514 (W.D.N.C. 2021)).  That is, § 4113.15(A) requires prompt payment, and § 4113.15(B) provides the penalty for the failure to do so.  *Id.* ("The Court finds that OPPA does not present separate causes of action in Paragraph A versus Paragraph B").  This view is consistent with prior case law which has consistently dismissed OPPA claims where a dispute existed as to whether wages were due.  *See, e.g.*, *O'Brien*, 575

F.3d at 577 (affirming dismissal of OPPA claim and explaining circumstances where a plaintiff may have a valid claim absent a dispute); *Garner*, 735 F.Supp.3d at 881 (collecting cases where courts have held OPPA does not apply if there is a "dispute"); *Lower v. Elec. Data Sys. Corp.*, 494 F.Supp.2d 770, 775 (S.D. Ohio 2007) (finding plaintiff cannot maintain OPPA claim because "§ 4113.15 expressly applies only to wages that are not in dispute").  None of the above-cited case law has found a valid claim under § 4113.15(A) despite § 4113.15(B)'s prohibition.

Bowman reasons that, because courts have held a violation of the FLSA or the OMFWSA automatically creates a cause of action under § 4113.15(A), a plaintiff can bring a § 4113.15(A) notwithstanding § 4113.15(B).  (Doc. 20 at 185-86.)  Bowman cites a series of cases that have allowed § 4113.15(A) claims relating to FLSA and OMFWSA violations.  (*Id.*)  True, these cases have allowed the OPPA claim to rise and fall with the FLSA and OMFWSA claims. However, none of these cases discuss the precise issue MetroHealth raises.  The *Garner* court similarly recognized this issue but found it ultimately unpersuasive in light of the other case law presented.  *Garner*, 735 F.Supp.3d at 880.  The court's reasoning in *Garner* is persuasive.  And, like the plaintiff in *Garner*, Bowman cannot proceed with an OPPA claim where there is a contest or dispute.  Count Three is dismissed.

### 3. Civil Action for Criminal Acts (R.C. § 2307.60) (Count Four)

R.C. § 2307.60 provides for the recovery of damages, including "exemplary and punitive," for "[a]nyone injured in person or property by a criminal act."  R.C. § 2307.60(A)(1); *Jacobson v. Kaforey*, 75 N.E.3d 203, 206 (Ohio 2016) (R.C. § 2307.60 "creates a statutory cause of action for damages resulting from any criminal act").  As stated above, the FLSA "requires employers to compensate employees at one and one-half times their 'regular rate' if they work over 40 hours per week."  *Acosta*, 919 F.3d at 363 (citing 29 U.S.C. § 207(a)(1)).  Section 215 of

the FLSA makes it "unlawful for any person" to violate § 207.  29 U.S.C. § 215(a)(2).  In turn, §

216 imposes criminal liability on "[a]ny person who *willfully* violates any of the provisions of

section 215[.]"  29 U.S.C. § 216(a) (emphasis added).

"Willfulness" under the FLSA requires "that the employer either knew or showed

reckless disregard for the matter of whether its conduct was prohibited by the statute."

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988);

*Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 842 (6th Cir. 2002) (same).

"[A]lthough conditions of a person's mind may be alleged generally, 'the plaintiff still must

plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind

allegation plausible on its face.'"  *Katoula v. Detroit Entm't LLC*, 557 F. App'x 496, 498 (6th

Cir. 2014) (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir.

2012)).  As pleaded, Count Four seeks to recover damages under R.C. § 2307.60 because

MetroHealth allegedly willfully violated the FLSA, thereby engaging in a criminal act.

MetroHealth challenges "willfulness."[4]  (Doc. 16 at 102.)  It describes the allegations of

alleged willfulness as "generic statements" that MetroHealth is a sophisticated organization that

should be aware of wage and hour laws.  (*Id.*)  MetroHealth relies on *Scheck v. Maxim*

*Healthcare Servs.* in support of its Motion.  333 F.Supp.3d 751 (N.D. Ohio 2018).  There, the

court dismissed a § 2307.60 claim because the complaint lacked "state of mind" allegations.  *Id.*

at 758.  The complaint merely alleged the defendant was aware of its obligations under the

FLSA, that the defendant did not act in good faith in formulating its pay practices, and that the

defendant willfully did not pay employees overtime.  *Id.*  These allegations, standing alone, the

---

[4] As with its other arguments, MetroHealth also argues Count Four should be dismissed because
Plaintiff fails to plead a FLSA claim.  Because the Complaint sufficiently alleges a FLSA claim,
this argument does not necessitate dismissal of Count Four.

court held, were nothing more than legal conclusions insufficient to allege willfulness.  *Id.*
MetroHealth argues the same is true of Bowman's Complaint.

The Complaint alleges more than the complaint presented in *Scheck*.  MetroHealth
maintained records regarding clock in and clock out times but still enacted a rounding policy in
willful violation of the FLSA.  (Doc. 1 at 14, ¶ 50.)  MetroHealth created this policy to
systematically underpay employees for purposes of saving money.  (*Id.*)  The Complaint also
pleads, consistent with the FLSA and Ohio law, MetroHealth maintains posters relating to
overtime pay yet created a pay policy that deprives employees of pay for actual hours worked.
(*Id.* at 13, ¶ 47.)  Because MetroHealth is a large, sophisticated employer, it can be inferred
MetroHealth knew its policies violate the FLSA.  (*Id.* at 12, ¶ 45.)  Combined, these allegations
are sufficient to state a claim for willfulness.  *See Miller v. AT&T Corp.*, No. 13-cv-1422, 2013
WL 5566698, 2013 U.S. Dist. LEXIS 146037, *6-7 (N.D. Ohio Oct. 9, 2013) (denying motion to
dismiss willful violation of FLSA claim because complaint included factual support for willful
allegations, there, improper record keeping); *Walsh v. Americare Healthcare Servs.*, No. 21-cv-
5076, 2023 WL 2544509, 2023 U.S. Dist. LEXIS 44991, *14 (S.D. Ohio Mar. 16, 2023)
(reserving ruling on willfulness until summary judgment because "[d]efendant's arguments are
better suited to the determination of whether there is a genuine issue of material fact regarding
willfulness").  MetroHealth's sole challenge to Count Four is without merit.

### 4.    Unjust Enrichment (Count Five)

To state a claim for unjust enrichment, a complaint must plausibly allege "(1) a benefit
conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3)
retention of the benefit by the defendant under circumstances where it would be unjust to do so
without payment."  *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984).  Unjust

enrichment allegations mirroring FLSA and OMFWSA allegations are not generally dismissed on a Rule 12(b)(6) motion.  *See Clark v. Pizza Baker, Inc.*, No. 18-cv-157, 2020 WL 5760445, 2020 U.S. Dist. LEXIS 178297, *12-13 (S.D. Ohio Sept. 28, 2020) (finding the FLSA does not preempt unjust enrichment claim at motion to dismiss stage, and allowing unjust enrichment claim to proceed along with FLSA, OMFWSA, and OPPA claims); *Monahan v. Smyth Auto., Inc.*, No. 10-cv-48, 2011 WL 379129, 2011 U.S. Dist. LEXIS 9877, *24-25 (S.D. Ohio Feb. 2, 2011) (finding the FLSA and OMFWSA does not preempt unjust enrichment claim at motion to dismiss stage).  Instead, "[a]t the very least, plaintiffs are permitted to plead claims in the alternative, and a court may not dismiss claims as preempted until the parties have had a chance to develop the facts during discovery to assess whether facts different from those comprising the [federal] claim support the state common law state claims."  *Clark*, 2020 WL 5760445, 2020 U.S. Dist. LEXIS 178297, *13.

The Complaint alleges MetroHealth has been unjustly enriched through its illegal time rounding policy because it has benefited from the labor of its employees without compensation. (*Id.* at 27, ¶ 113.)  MetroHealth was unjustly enriched "both as to straight time and overtime." (*Id.* at 9, ¶ 35.)  Bowman seeks the "full amount of regular wages that remain unpaid."  (*Id.* at 27, ¶ 116.)

MetroHealth focuses on a purported inconsistency in the Complaint allegations. Bowman first pleads her unjust enrichment claim as one relating to straight time and overtime. (Doc. 1 at 9, ¶ 35.)  But she later pleads her unjust enrichment claim as relating only to overtime. (*Id.* at 26, ¶ 110.)  Seizing on this inconsistency, MetroHealth argues the OMFWSA preempts any overtime claim.  Bowman acknowledges the preemption doctrine but clarifies that her unjust enrichment claim only relates to straight time, not overtime, and is therefore distinct from the

FLSA and OMFWSA overtime claims.  (*Id.* at 169-70.)  MetroHealth nonetheless seeks dismissal of the claim for straight time.  (Doc. 21 at 209-10.)  It argues even Bowman's straight time unjust enrichment claim is governed by the OMFWSA and OPPA and is therefore preempted.  (*Id.* at 209.)

The Complaint has plausibly stated a claim for unjust enrichment.  There are sufficient factual allegations and, drawing all reasonable inferences in Bowman's favor, the claim can proceed.  Indeed, MetroHealth did not present the Court with any legal authority that the claim presented must be dismissed.  As the movant, it is MetroHealth's burden to demonstrate dismissal is merited as a matter of law.  It has not done so.

## III.    CONCLUSION

For the reasons stated herein, Defendant MetroHealth System's Motion to Dismiss (Doc. 16) is GRANTED in part and DENIED in part.  Count Three of Plaintiff Jennifer Bowman's Complaint is DISMISSED.  The Motion to Dismiss is DENIED as to all other claims presented in the Complaint.


**IT IS SO ORDERED.**


Date:   November 24, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE